840 F.2d 17
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles HALE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1253.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1988.
 
 Before ENGEL, CORNELIA G. KENNEDY, and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Hale appeals the District Court's decision that the Secretary's denial of Social Security disability benefits is supported by substantial evidence. Because the record does not support the Secretary's finding that appellant is not disabled, we REVERSE.
 
 
 2
 Hale filed his application for benefits by reason of a disabling heart impairment in May, 1985, following triple coronary bypass surgery in June 1984 and a short return to work between October and December 1984. The claim was denied administratively and by the Administrative Law Judge (ALJ). That decision became the final decision of the Secretary when the Appeals Council denied review.
 
 
 3
 Hale sought judicial review, and the United States Magistrate, to whom the case was assigned for report and recommendation, recommended that the District Court reverse the decision of the Secretary and grant benefits. The District Court, in a short order, granted judgment to defendant Secretary.
 
 
 4
 The ALJ's decision encompasses several different findings, following the requirement of 20 C.F.R. Sec. 404.1520(e). First, he found that Hale's "impairment of ischemic heart disease is not serious enough to meet or equal the Listings," Joint Appendix at 20, according to section 404.1520(d). We agree that this finding is supported by substantial evidence. To meet the listing Hale must have the requisite degree of disease in the new arteries; that is, in the grafted arteries. The result of the surgery must be included in the evaluation, 20 C.F.R. pt. 404, subpt. P, App. 1 J ("Major surgical procedures"). Although there is a dispute as to whether there was evidence that disease was present in one of the grafted arteries, the Secretary's conclusion that the disease is in the mammary artery is supported by substantial evidence.
 
 
 5
 The ALJ's second finding is that Hale's subjective complaints of pain were not fully supported by the objective medical evidence. Hale contends this finding is not supported by substantial evidence. We agree.
 
 
 6
 The ALJ found that the "claimant has a severe impairment, that is, one which significantly limits his abilities to engage in certain work activities such as heavy lifting," Joint Appendix at 20, but the "impairment does not prevent [him] from performing his past relevant work," which was as parts assembler, floor supervisor, and inspector in an auto plant, Joint Appendix at 21.[1] The basis of this finding is the opinion of the Medical Advisor, who had never examined Hale, that Hale "would be able to carry out at least light work. However, because of the presence of demonstrated coronary artery disease, he should not work for prolonged periods with his arms above shoulder level nor should he be exposed to high emotional stress," Joint Appendix at 268.[2] But the Medical Advisor's opinion was in turn based only on his evaluation of Hale's stress tests. The Medical Advisor conceded that if Hale's complaints of pain were accepted, he was unable to work. The Medical Advisor testified, however, that "the angiographic findings are not what you would correlate with the complaints," Joint Appendix at 72. He agreed, however, that "assuming there is underlying disease, and [there] clearly is here," the complaints of pain need not necessarily correlate with the test results.
 
 
 7
 The Secretary maintains that the ALJ also relied on the report of consultant Howard L. Dubin, D.O. who examined Hale.[3] The Secretary characterizes Dr. Dubin's position as "merely restrict[ing] Hale from returning to any occupation requiring repetitive pulling, physical or severe emotional stress," Secretary's Brief at 19. What Dr. Dubin actually wrote is somewhat different. After describing Hale's work on the assembly line as "doing repetitive lifting, pulling, prolonged standing and a great deal of walking," Joint Appendix at 247, Dr. Dubin concluded:
 
 Clinical impressions at this time are:
 
 8
 1) Coronary artery disease.
 
 
 9
 It is felt the patient cannot return to any occupation where he does repetitive pulling or any physical stress whatsoever. He cannot be exposed to any severe emotional stress as the patient is still symptomatic. Although not the primary cause of his coronary disease, it is felt his employment aggravated his condition resulting in an anginal syndrome or a preinfarction syndrome which then resulted in an acute myocardial infarction while employed at Ford Motor Company.
 
 
 10
 Joint Appendix at 248.
 
 
 11
 A fair reading of Dr. Dubin's report makes it clear that he believes Hale is medically disabled from returning to his job as an automobile assembler.
 
 
 12
 More importantly, there are reports of Cheryl A. Huckins, M.D., who was Hale's treating physician beginning in January, 1984. This Court has repeatedly held that in determining the substantiality of the evidence, reports of treating physicians "who have treated the claimant/patient over a number of years are to be given greater weight than are reports of physicians employed and paid for by the government for the purpose of defending a disability claim," Kirk v. Secretary of HHS, 667 F.2d 524, 536 (6th Cir.1981).[4] The Secretary says that Dr. Huckins' specific recommendations "do not differ very greatly from those" of the Medical Advisor, Secretary's brief at 18. Again, the physician's actual words do not support the Secretary's characterization. In her report dated November 11, 1985, she states:
 
 
 13
 I believe his prognosis is guarded, in view of the finding of rapidly progressing coronary disease, I do not think he's able to perform a job which would require him to work eight hours, as his pain may awaken him at night when he is not doing anything. He is not able to lift, or bend, or work with his arms above his shoulders for any period of time.
 
 
 14
 Joint Appendix at 251. It is clear that Dr. Huckins is saying that Hale is suffering too much pain to enable him to work eight hours. Additionally, repetitive bending, or repetitive lifting, without regard to weight, is, in Dr. Huckins' medical opinion, contraindicated. Further, Dr. Huckins' report confirms claimant's complaints of severe pain.
 
 
 15
 However, each week after returning to work, he progressively worsened, with decreasing energy and increasing chest pain that required up to three Nitroglycerins before he got relief. ... However his chest pain increased with treatment for esophagitis.
 
 
 16
 I subsequently referred him to Dr. Vogel of Cardiology at the VA Hospital in Ann Arbor. He reviewed his studies and felt that he had a rapid progression of his native coronary artery disease. He pointed out that he had totally occluded the native arteries of those vessels which had been bypassed. He felt that his chest pain was due to coronary ischemia, and recommended a program of reducing risk factors, such as lowering his cholesterol, using anti-platelet medications, and an antianginal program.
 
 
 17
 Since that time we have attempted to bring his chest pain under control with an adjustment in his anti-anginal program. His most recent exercise thallium study raised the question of new ischemia in the lateral wall similar to that which was seen before his bypass surgery. Since early October he has had increasingly severe chest pain, awakening him at night, requiring several Nitroglycerin to give him relief, and then its only temporary. He's having this occur every day even at rest, despite a maximum medical program including Isordil 60 mg. QID, Cardizem 90 mg. QID, Quinaglute 600 mg. Q 8 hrs., Persantine 75 mg. TID, and 1 aspirin a day.
 
 
 18
 Joint Appendix at 251.
 
 
 19
 The Secretary contends that the ALJ's determination was also based on an evaluation of the negative stress tests and negative catheterizations. But there is no evidence that these tests are inconsistent with the findings of Drs. Huckins and Dubin.
 
 
 20
 Ultimately, the ALJ's finding is based solely on the Medical Advisor's opinion, based on test evaluation, that the degree of pain felt by Hale does not prevent him from doing "light work." Where, as here, the claimant's attending physician substantiates his testimony that he has severe pain and the Medical Advisor admits that there are wide variations in the severity of the pain that different individuals would experience with the angiographic findings that Hale has, we do not believe substantial evidence supports a finding that Hale does not suffer severe pain which prevents him from engaging in substantial gainful activity.
 
 
 21
 The judgment of the District Court is REVERSED, and the action is remanded to the District Court with directions to remand to the Secretary for an award of benefits.
 
 
 
 [1]
 The Appeals Council, while denying Hale's request for review, apparently conceded that because it might be emotionally stressful, the supervisory job was contraindicated, but the other positions were not
 
 
 [2]
 The Medical Advisor also testified that Hale should avoid frequent exposure to cold
 
 
 [3]
 It is not clear that in fact the ALJ relied on Dr. Dubin's report, but in view of our evaluation of Dr. Dubin's conclusions, this question need not be reached; in either case, it is not evidence which supports the ALJ's decision
 
 
 [4]
 This Court has so held even when the government's doctor has examined the patient. In this case, it should be recalled, the Medical Advisor never examined Hale